The docket this morning is 24-10557. Arzamendi, I'm not sure how to pronounce that, versus the Department of Defense. Arzamendi is correct, Your Honor. Mr. Lloyd, thank you. Good morning, May Police Court. Scott Lloyd appearing on behalf of plaintiffs Amy Arzamendi, Michael Orloff, and Brooke Stadler. We have three principal issues in this case. These form the core of the District Court's decision below. The first is whether the Mutinous Doctrine applies to claims of money damages, and we propose that it does not. Claims for money damages inherently are backwards looking, and they seek compensation for harms in the past. The Mutinous Doctrine would only apply if a policy or the rescission of the government's vaccine mandate had been repealed during the time of the alleged harm, and that was not the case here. Second question is the question of what a plaintiff must plead when pleading Title VII claim of religious discrimination. Must he plead how a work requirement violates his religious belief, or is it enough for him to plead that the work requirement violates his religious belief? And we submit that it's enough for the claimant to plead that there is a religious belief that conflicts with the work requirement, and this is for religious accommodation purposes. And the third principal issue is whether the harms that the plaintiff mentioned here in its pleadings are sufficient for the purposes of Title VII and the Religious Freedom Restoration Act. They are, especially in light of Muldrow v. City of St. Louis, where the Supreme Court held that at least in the Title VII context, some harm was sufficient for a Title VII pleader, and we think that has applicability to these RFRA claims. The defendants, the appellees, take a different view of the controlling issues here. They focus instead on whether relief is appropriate under RFRA and also the sufficiency of the pleadings under Title VII, and so we will also say a few words about that as well. But we do want to note that we think the government's approach here concedes the strength of our position on the mootness issue in particular. As for the remaining issues, we're asking the court to overturn the district court's dismissal on mootness grounds, on the harms issue and on the adequacy of the plaintiff's pleadings on the religious beliefs, and to remand for further proceedings at the district court level. So defendants assert a whole host of defenses, alternative arguments and defenses. The district court didn't really reach him, and your briefing, you don't really respond to him here. So can you kind of identify specifically the relief that you're seeking, what you want us to do? Sure, Your Honor. The hope is that there would be, whether it would be a reversal of the grounds that the district court held, that leaves open the additional issues that the government raises, and a remand that doesn't address those issues, I guess, could also be subject to dismissal at the lower court level if those issues are not addressed. And so we'll have the opportunity to discuss them, but we think that the district court's core reasoning is really what's at issue here, and that was why we focused on that in our briefing. So just so I'm clear about the facts, had the executive order been rescinded prior to the filing of the lawsuit? The executive order had been rescinded before filing the lawsuit. Why isn't there a stand-in issue? Because this is a question of Title X religious discrimination harm failure to accommodate, and we're asking for compensatory monetary damages for those harms. And our RFRA claims also focus on the harms that have occurred in the past during the pendency of the vaccine mandate, so they're essentially backwards looking, and we're requesting monetary damages related to the employment harms that occurred there. And on the failure to accommodate issue, was the request still pending at the time it was filed? Both the request for religious accommodation regarding vaccination were all pending. Some of the plaintiffs, and we'll say putative class members, requested accommodations regarding testing and masking, and some of them received answers and some of them didn't. In the case of the named plaintiff, Ms. Arzamendi, she had asked for both accommodations for vaccination and testing and masking. She had received the answer regarding her testing and masking, and that was a denial. And the vaccination request was still pending. The vaccination request was pending, yes. That's great. Thank you. And so turning to the mutinous doctrine, the government defendants don't address it, at least to the question of money damages for harms suffered in the past. And we think that the weight of authority tips heavily in favor of the appellant's position here, and we think for an excellent summary of the mutinous doctrine as it applies to money damages, the court can just look to Brinson v. McAllen, Independent School District, and Morgan v. Plano, Independent School District. And Morgan in particular cites Fifth Circuit case law going back to 1978, and all of it supporting the idea that the mutinous doctrine applies to injunctive relief, but it does not apply to monetary damages, even nominal damages. The district court, in its opinion, it relies on Harris v. Biden, and that's a five-paragraph opinion where all of the parties agree that the mutinous doctrine applied, and it was a request originally for equitable relief, and it was not a request for money damages. And so that brings us to the question of the harms that the plaintiffs suffered here and whether those are sufficient to get us past the motion to dismiss fees in a Title VII dispute. And the first thing that we want to sort of dispense with is the idea put forth in the government's briefings that they were accommodating these plaintiffs. Rather, the reality was more like that they were waiting for the opportunity to punish or fire these individuals, and the only thing that was standing in between them and that goal was the judiciary. The plaintiffs knew this at every step of the way, and they knew that once the injunction was lifted that this could spell immediate termination for them. All of them were beyond the deadline for vaccination. Can you be clear about your money damage claims regarding the vaccination? They were never vaccinated. That's correct. That was lifted before suit was filed. What damages are compensatory? What is there to be compensated for? It's mental anguish similar to a harassment claim in a Title VII context. And so if there's sexual harassment or other sorts of harassment, we're familiar with the idea that as a result of the mental anguish that occurred, that there can be compensatory damages for that. In addition, there are some, with Mr. Orloff in particular, there is the question of whether he missed promotional opportunities as a result of his inability to travel. And then finally, Ms. Stadler, she was constructively discharged as a result of the ongoing dispute about both vaccination and testing. And recalling the original complaint was a class action, and so we think that there would be subclasses of damages should there be a certification of the class. And so this essentially turned everybody's workday environment into a spiritual crisis, one where they could relieve this pressure on themselves by taking a vaccine, but at the expense of their religious beliefs. And this is the type of conundrum that RFRA and Title VII both exist to prevent and eliminate. The only thing that the government had to do here was to say, listen, we know that you have a religious view that conflicts, and we're going to accommodate that injunction or no injunction. But they never did that. They never communicated with the plaintiffs, and that left them with the idea that any day they could be punished, and it was a matter of them following their religious belief or not. And the same goes with testing and masking, too. This could be something that would be reasonable in certain contexts and perhaps even in a COVID context. But in this context, after it had been established that COVID could be caught and spread by people who had received the vaccination, testing and masking policy that really hits only religious believers, it's not a combination as much as it's some sort of insult or a manner of singling out people for the choices that they're making. Here are the choices to follow their religious beliefs. And so all of this, the emotional distress and mental anguish, the loss of opportunity for advancement, all these together are under the Muldrow v. City of St. Louis test enough to constitute some harm. Okay. And there are a couple of the named plaintiffs who allege religious conflict with testing and masking, and the district court says that they must allege facts regarding the nature of their belief as well as facts connecting their objection to a belief system. And the plaintiffs urge the idea that it's enough for them simply to state that there was a religious objection and that it conflicts with a work requirement. As for the pleadings of this specific case, Ms. Arzamendi's pleading or the pleadings that speak to her state that she requested a religious accommodation and that the government denied it. And we think that that's enough and that any heightened pleading standard is something that's extra textual and it's not supported by case law here in the Fifth Circuit. And, in fact, the district court relied on a case law out of Colorado, a district court, not anything from the Fifth Circuit. Finally, a few words regarding the Religious Freedom Restoration Act. And the first one, and there are a number of sub-issues under RFRA, but the first one is the question of sovereign immunity. And we're just going to take it back to the statute, which states, a person whose religious exercise has been burdened in violation of this section may assert that a violation has a claim in a judicial proceeding and obtain appropriate relief against the government. And so just by the plain language of the statute, it's hard to conclude that this is not a waiver of sovereign immunity as it allows relief against the government. Nothing in the language excludes the U.S. government, nothing in, in fact, its inclusive language that naturally would include the U.S. government. Over time, other courts, not the Fifth Circuit, have read the provision, appropriate relief against the government to include only individual claims against a government official in its individual capacity. That seems to conflict with the language of the statute. The Fifth Circuit hasn't reached this question on sovereign immunity with regard to RFRA, and the government relies on persuasive authority from other areas. As for the qualified immunity question under RFRA for the individual claims, the question is whether the rights being violated are ones that are well-established. And here we're talking about the Civil Rights Act of 1964, which has obviously been in effect since 1964, and the Religious Freedom Restoration Act, which harkens back to 1993, but it codifies Lemon v. Kurtzman, which is around since 1971. With that, I'll conclude.  May it please the Court. Sarah Griffin for the United States. I just want to start by highlighting, I think, what's fallen away from this case. So plaintiffs have forfeited any argument as to RFRA. They've forfeited any argument as to venue for Plaintiffs Orloff and Stadler. They've affirmatively waived their Bivens and injunctive relief claims. And so I think all that leaves this Court with is Arzamendi's Title VII and Rehab Act claims, and those, for the reasons that we state in our brief, she's failed to state a claim there. So I just want to sort of narrow, to the extent possible, what plaintiffs have even presented any argument on as we focus the Court's attention there, to the extent possible. Arzamendi's Title VII and Rehab Act claims arise primarily from the vaccination requirement. As I think is clear from the briefing, and as this Court understands, that requirement was only in effect for a couple months. It was enjoined in January of 2022. At that time, plaintiffs' religious exemption requests were still pending. And under the terms of the policy, which plaintiffs don't dispute, when you have a pending exemption request, you're not required to comply with the requirements. So they were protected both by the fact that they had these pending requests and then soon after by the fact that there was a preliminary injunction in effect, which stayed in effect until the requirement was rescinded. So plaintiffs never were confronted with the decision to get the vaccination, to which they objected, or suffer any sort of adverse employment action. So that's the vaccine requirement. There are some references in the complaint to plaintiffs' potential objections to other COVID mitigation measures. So plaintiffs allege that Arzamendi submitted an exemption request to masking, testing, and distancing. They don't allege that she had any religious objections to those requirements, and that's not, I think, splitting hairs to note that she has not alleged that. And I also want to note, with regard to these other mitigation measures, that they applied to any employee who is unvaccinated, and the district court observed this as well. So these were not targeted, contrary to plaintiffs' suggestion, at religious objectors to the vaccine requirement or to the mitigation requirements. They were generally applicable policies. They happen to have application to plaintiffs because they were unvaccinated on the basis of their alleged religious beliefs, but that doesn't help plaintiffs establish that those other policies were somehow either punishing them for their objection to the vaccination or were independently sort of harming them. I'm happy to address any specific issues the court has questions about. I don't want to sort of leave anything unanswered, but I think given plaintiffs' forfeiture as to a number of the issues and given the quite narrow question as to Title VII and the Rehab Act, we're happy to rest on our briefs. Thank you. Just a quick few notes. As for forfeiting RFRA issues, I'm just flipping through our responses and our appeal, and I don't see that we've forfeited any RFRA issues, but we're happy to have things reflect what we briefed. And so in regards to Title VII and the idea of whether the vaccination requirement and whether the plaintiffs were confronted with any sort of idea of losing their job, really we need to place this in the context, and it's reflected in our pleadings, that there were daily reminders about these requirements. The plaintiffs were receiving these in emails. They were getting reminders in town hall-type settings and among supervisors, and then there's the everyday reminders of people walking down the hall. But do you agree that there was no requirement to comply under the policy that she referenced earlier? It wasn't a matter of policy. The requirement was there, and it was ultimately going to result in the separation of all these plaintiffs. The only reason that it stopped was because the entire mandate was enjoined in court. But for the injunction, there would have been termination and separation, and that's what the plaintiffs were confronting on a daily basis, and that's what they were fearing, and that was what was causing them so much distress. And to the question of whether these were generally applicable requirements, we're representing a subset of the folks who were eligible for accommodation or exemption from the general requirement. As far as we understand it, there are only two categories of people who would be eligible for accommodation, those with religious beliefs and those with some sort of physical limitation. The possibility that some failure to accommodate and some sort of other discrimination happened in the context of those with physical disabilities or limitations, it's out there, it's possible. Those are not our clients. Our clients are the folks who had to respond to or had to request religious accommodations. There could be rampant discrimination in that other class of individuals. The idea that this is just a generally applicable requirement, it really ends when the plaintiffs communicate to their employer that they have a religious accommodation that does not jive with this accommodation. And immediately upon that communication, this becomes a class of religious objectors, and anything that happens subsequent to that has to be viewed in that context. And unless there are any other questions, that concludes my remarks. Thank you, Kilton.